533 A.2d 110

**Louis SILVERMAN and Celia Silverman, H/W, Appellants,**

v.

**BELL SAVINGS & LOAN ASSOCIATION and Langsdorf–Adler Company a/k/a Century 21 Langsdorf–Adler Company, Appellees.**

Superior Court of Pennsylvania.

Argued May 5, 1987.

Filed Oct. 2, 1987.

Reargument Denied Nov. 25, 1987.

Robert M. Fellheimer, Philadelphia, for appellants.

Robert H. Dickman, Philadelphia, for Bell Sav., appellee.

David Weinstein, Philadelphia, for Langsdorf–Adler, appellee.

Before BROSKY, WIEAND and BECK, JJ.

WIEAND, Judge:

The principal contention made in this appeal is that the post-trial court erred when it changed the findings of the chancellor who had determined that a real estate transaction should be rescinded because of fraud. We are constrained to agree that appellant's contention is well taken; and, therefore, we reverse.

A review of the facts is essential to an understanding of the issues. In or about March, 1982, Bell Savings & Loan Association acquired title via mortgage foreclosure to premises known as 863 Township Line in Abington Township, Montgomery County. Bell listed the premises for sale with Langsdorf–Adler Company (Adler), a real estate broker. Adler prepared a multi-list card which recited, inter alia, that the premises measured thirty (30) feet by one hundred (100) feet and was zoned "F–1 Offices." The card also recited that the rear of the property was available for parking. After the property had been listed, Martin Arost, one of Bell's officers, had occasion to tell Louis Silverman, an attorney who was known to invest in real estate, that the premises were being offered for sale. Thereafter, Arost sent Silverman a copy of the listing card, and Mrs. Silver-

man was shown the property by an Adler employee. During Mrs. Silverman's inspection of the property she asked about and was told that parking was permitted on the rear eighty feet of the lot.

It was some time later that Adler discovered that the listed property actually consisted of two lots, with the front lot measuring 30 × 120 feet and the rear lot measuring 30 × 80 feet. Adler also discovered that the rear lot was not zoned for commercial use but for residential use. As such, commercial parking thereon was a prohibited use. Adler informed Bell of the error, but neither Adler nor Bell conveyed the correct information to Silverman. On May 12, 1982, Bell entered a written agreement to sell the premises to Mr. and Mrs. Silverman, who agreed to buy the same for $43,000.00.

Several days before closing, which was scheduled for July 6, 1982, Silverman toured the property with Mr. Adler who expressly represented that the rear portion of the lot was available for parking. At the closing, after Silverman had voiced some doubt regarding the zoning of the rear portion of the lot, a call was placed by Martin Laub, a Bell representative, to an unidentified employee of Abington Township. When Silverman was reassured by Laub, following Laub's call, that the zoning ordinance permitted the lot to be used for commercial purposes, the closing was completed.

Silverman made repairs to the building and leased the premises to Nancy Monahan for purposes of conducting a school for bartenders.[1] It was then learned, however, that a bartending school was not permitted in an "F-1 Offices" zone and that commercial parking was not permitted on the rear portion of the lot. When Silverman's efforts to obtain a variance were unsuccessful, the rental agreement was terminated.

The Silvermans filed an action in equity against Bell alleging fraudulent misrepresentation and seeking re-

1. A prior attempt to lease the premises for use as a printer's shop was not consummated.

scission of the real estate transaction. Bell caused Adler to be joined as an additional defendant. The action was tried without a jury before the Honorable William M. Marutani, who found that Bell and Adler had made and the Silvermans had relied upon material misrepresentations regarding the zoning classification of the property. The court awarded rescission and in connection therewith directed that Bell return all moneys received from the Silvermans. Bell and Adler were held jointly and severally liable for (1) interest paid by the Silvermans on account of moneys borrowed to complete the sale; (2) taxes paid by the Silvermans; and (3) insurance premiums paid by the Silvermans in order to insure the premises. The court refused to award damages to the Silvermans for repairs necessitated by vandalism after title had been conveyed and for costs and legal fees expended in an attempt to obtain a zoning variance.

All parties filed post-trial motions which, because of Judge Marutani's retirement, were heard by the Honorable Lois G. Forer. Judge Forer concluded that although Bell and Adler had misrepresented the zoning classification, the misrepresentation was not material and the Silvermans should not have relied upon it. She determined that rescission was an inappropriate remedy and that the Silvermans' only damages were the difference between the value of the rear lot if it had been zoned for commercial use and its actual value as zoned for residential use. A new trial was ordered to determine the Silvermans' comparative negligence and to make a proper determination of damages. The Silvermans appealed.

"[W]hen a court en banc reverses the findings of a chancellor and gives reasons for so doing, it is the duty of an appellate court to carefully examine the reasons given, 'together with the entire record, and determine whether the action of the court en banc is justified, keeping in mind the weight to which the original findings are entitled and also the reasons given for their overthrow.'" *Sorbello v. Sorbello*, 272 Pa.Super. 424, 428, 416 A.2d 529, 531 (1979),

*allocatur denied,* quoting *Belmont Laboratories, Inc. v. Heist,* 300 Pa. 542, 548, 151 A. 15, 17 (1930). In the instant case, the court en banc accepted most of the findings of fact made by the chancellor but concluded that, even so, the fraudulent misrepresentations found by the chancellor were not material and should not have been relied upon by the buyers. We are constrained to disagree with the court en banc.

■ In *Delahanty v. First Pennsylvania Bank,* 318 Pa. Super. 90, 107–109, 464 A.2d 1243, 1251–1252 (1983), fraud was defined as follows:

Fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. *Frowen v. Blank,* 493 Pa. 137, 425 A.2d 412 (1981). It has been said that fraud may induce a person to assent to something which he would not otherwise have done, or it may induce him to believe that the act which he does is something other than it actually is. *Greenwood v. Kadoich,* 239 Pa.Super. 372, 357 A.2d 604 (1976). To be actionable, the misrepresentation need not be in the form of a positive assertion. *Shane v. Hoffmann,* 227 Pa.Super. 176, 324 A.2d 532 (1974) [*overruled on other grounds, Aiello v. Ed Saxe Real Estate, Inc.,* 508 Pa. 553, 560, 499 A.2d 282, 286 (1985)]. It is any artifice by which a person is deceived to his disadvantage. *McClellan's Estate,* 365 Pa. 401, 75 A.2d 595 (1950). It may be by false or misleading allegations or by concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment. *Baker v. Rangos,* 229 Pa.Super. 333, 324 A.2d 498 (1974). It is well settled that fraud is proved when it is shown that the false representation was made knowingly, or in conscious ignorance of the truth, or recklessly without caring whether it be true or false. *Warren Balderston Co. v. Integrity Trust Co.,* 314 Pa. 58, 170 A. 282 (1934). It has also been estab-

lished that "the deliberate nondisclosure of a material fact amounts to a culpable misrepresentation no less than does an intentional affirmation of a material falsity." *Neuman v. Corn Exchange National Bank & Trust Co.,* 356 Pa. 442, 450–52, 51 A.2d 759, 764 (1947). Yet, a misrepresentation innocently made is also actionable if it relates to a matter material to the transaction involved; while if the misrepresentation is made knowingly or involves a non-privileged failure to disclose, materiality is not a requisite to the action. *Shane v. Hoffmann,* 227 Pa.Super. 176, 324 A.2d 532 (1974) [*overruled on other grounds, Aiello v. Ed Saxe Real Estate, Inc.,* 508 Pa. 553, 560, 499 A.2d 282, 286 (1985)]....

The elements of fraud are as follows: " 'there must be (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result.' " *Scaife Co. v. Rockwell–Standard Corp.,* 446 Pa. 280, 285, 285 A.2d 451, 454 (1971), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806, quoting *Neuman,* 356 Pa. at 442, 51 A.2d at 763; See e.g. *Edelson v. Bernstein,* 382 Pa. 392, 115 A.2d 382 (1955); *Gerfin v. Colonial Smelting & Refining Co.,* 374 Pa. 66, 97 A.2d 71 (1953); *Shane v. Hoffman,* 227 Pa.Super. 176, 324 A.2d 532 (1974); *Laughlin v. McConnel,* 201 Pa.Super. 180, 191 A.2d 921 (1963). See also: *Pittsburgh National Bank v. Larson,* 352 Pa.Super. 250, 254, 507 A.2d 867, 869 (1986). In the instant case the evidence was sufficient to support the trial court's findings that Bell and Adler had knowingly misrepresented the zoning status of the property to the buyers.

"[I]f [a] misrepresentation is knowingly made or involves a non-privileged failure to disclose, materiality is not a requisite to the action...." *Shane v. Hoffmann, supra* 227 Pa.Super. at 182, 324 A.2d at 536, citing *DeJoseph v. Zambelli,* 392 Pa. 24, 139 A.2d 644 (1958). See: *Delahanty v. First Pennsylvania Bank, supra.* Here, the evidence

showed and the trial court found that Bell and Adler had misrepresented to the Silvermans that the entire premises were zoned for commercial use despite their knowledge that the rear lot was zoned for residential use only. Under these circumstances, deliberate fraud was proven, and the materiality of the misrepresentation, or the lack thereof, was not a relevant consideration.

Moreover and in any event, if materiality were a necessary element, we would be compelled to agree with the trial court's conclusion that Bell and Adler's misrepresentations were material.

A misrepresentation is material when it is of such a character that if it had not been made, the transaction would not have been entered into. *Greenwood,* 239 Pa. Super. at 378, 357 A.2d at 607. One deceived need not prove that fraudulent misrepresentation was the sole inducement to the investment of money, a material inducement is sufficient. *Neuman,* 356 Pa. at 454, 51 A.2d at 765.

*Delahanty v. First Pennsylvania Bank, supra.*

That the availability of parking on the property was important to the buyers was amply proven at trial. Indeed, Mrs. Silverman had expressly asked Adler's agent about the parking area; and representatives of both Adler and Bell had repeatedly emphasized the availability of on-premises parking when discussing the property with the Silvermans. The evidence showed that the property was located in an area in which on-street parking was severely limited. Therefore, the availability of parking spaces on the premises was an incentive to potential lessees interested in operating a business on the property. Consequently, the availability of parking on the rear lot directly affected the value of the entire property. Under these circumstances, the trial court could properly find that the zoning status of the rear portion of the property was material to the transaction.[2]

2. The court en banc's conclusion that the zoning issue was not material to the transaction because a bartending school, the use to which the Silvermans' tenant intended to put the property, was not

"It is a fundamental principal of the law of fraud, regardless of the form of relief sought, that in order to secure redress, the representee must have relied upon the statement or representation as an inducement to his action or injurious change of position." 37 Am.Jur.2d, *Fraud & Deceit*, § 223, at 297 (1968) (footnote omitted). "The recipient of a fraudulent misrepresentation can recover against its maker ... if, but only if, (a) he relies on the misrepresentation in acting or refraining from action, and (b) his reliance is justifiable." Restatement (Second) of Torts § 537 (1977). See: *Scaife Co. v. Rickwell–Standard Corp.*, 446 Pa. 280, 286–288, 285 A.2d 451, 455–456 (1971); *Emery v. Third National Bank of Pittsburgh*, 308 Pa. 504, 511–512, 162 A. 281, 283 (1932); *Delahanty v. First Pennsylvania Bank, supra; National Building Leasing, Inc. v. Byler*, 252 Pa.Super. 370, 376, 381 A.2d 963, 966 (1977); 37 Am. Jur.2d, *supra* at §§ 223, 236.

> It is not essential to the existence of a valid right of action for fraud that such wrongful conduct be the sole cause of the plaintiff's loss; it is enough to show that it was an essential or inducing cause. It has been held that if the plaintiff would not have acted except for the false representations, there is such a reliance thereon as entitles him to maintain an action even though the misrepresentations were not the exclusive inducing cause. Thus, the rule is that it is not necessary to the predication of fraud that a misrepresentation be the sole cause or inducement of the contract or transaction in question, and the only element relied upon by the representee contributing to the result, but it is enough that it may constitute a material inducement.

37 Am.Jur.2d, *supra*, § 227, at 303 (footnotes omitted). See: *Neuman v. Corn Exchange National Bank & Trust Co., supra* 356 Pa. at 454–455, 51 A.2d at 765. Whether the party claiming to have been defrauded relied upon the false

permitted in an F–1 commercial zone is a *non sequitur.* The evidence does not suggest and the chancellor did not find that the Silvermans had purchased the property solely for the purpose of leasing it to Monahan for purposes of conducting a bartending school.

representation is a question of fact. See: *National Building & Leasing, Inc. v. Byler, supra;* 37 Am.Jur.2d, *supra* § 229 at 305; Restatement (Second) of Torts, *supra* § 537 comment a.

■ In the instant case, the trial court found that the Silvermans had, in fact, relied upon Bell and Adler's misrepresentations. This finding is supported by the evidence. Silverman testified that he would not have agreed to purchase the property if he had known that it was not zoned as Bell and Adler had represented. Although Silverman acknowledged the fact that an unidentified Abington Township employee had also represented that the property was zoned for commercial use, he testified that in making his decision to accept title to the property he continued to rely on Bell and Adler's representations as well as that which had been made by the township employee. Under these circumstances, we conclude, the trial court was not acting without factual support when it found that appellants had relied upon the misrepresentations by Adler and Bell. Therefore, the post-verdict court exceeded its proper scope of review when it substituted its own finding for that of the trial court.

The rules for determining whether a person's reliance upon a fraudulent misrepresentation are justifiable have been set forth in sections 540 and 541 of the Restatement (Second) of Torts. Those rules provide as follows:

§ 540 **Duty to Investigate**

The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.

§ 541 **Representation Known to Be or Obviously False**

The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.

Thus, "[a]lthough the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the

maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Restatement (Second) of Torts § 541 comment a. See: *Sciafe Co. v. Rockwell–Standard Corp., supra* 446 Pa. at 287, 285 A.2d at 455; 37 Am.Jur.2d, *supra* §§ 236, 237, 248–250. The right to rely upon a representation is generally held to be a question of fact. See: *National Building Leasing, Inc. v. Byler, supra* 252 Pa.Super. at 376, 381 A.2d at 966; 37 Am.Jur.2d, *supra* §§ 240, 264.[3]

The trial court determined that the Silvermans' reliance upon Bell and Adler's misrepresentations had been justified. The post-verdict court, however, disagreed, concluding that such reliance had not been justified because Mr. Silverman should have checked the zoning of the property himself. However, the law is clear that there is no obligation on the part of a purchaser to examine public records prior to purchase. See: *LaCourse v. Kiesel,* 366 Pa. 385, 389, 77 A.2d 877, 880 (1951); *Merritz v. Circelli,* 361 Pa. 239, 242, 64 A.2d 796, 798 (1949). Moreover, the evidence in the instant case does not suggest that the falsity of Bell and Adler's representations should have been apparent to the Silvermans from their inspection of the property. On the contrary, the record shows that the appearance of the rear portion of the property was consistent with Bell and Adler's representations that it could be used as a parking area. Finally, although it cannot be denied that Mr. Silverman, as an attorney and a real estate investor, could have verified the zoning status of the property prior to consummating the sale, the facts are not such as to require a finding that his failure to do so operated as a bar to recovery. This is

---

**3.** The suggestion by the post-verdict court that principles of comparative negligence should have been applied was inappropriate. Where a plaintiff has justifiably relied upon a fraudulent misrepresentation, his recovery is neither barred nor can it be reduced because of his own negligence. See: Restatement (Second) of Torts § 545A.

especially so in light of the fact that the Silvermans had engaged in numerous prior real estate transactions with Bell and, therefore, had a basis for trusting the representations made by Bell's employees. See and compare: *Sciafe Co. v. Rockwell–Standard Corp., supra.*

Having concluded that the evidence supported the trial court's findings establishing fraud, the remaining issue is whether the trial court's remedy was appropriate. Equitable rescission is proper "if the purchaser was induced to enter a contract or sales agreement by material misrepresentation." *Gilmore v. Northeast Dodge Co.,* 278 Pa.Super. 209, 214, 420 A.2d 504, 506 (1980). See: *Lake v. Thompson,* 366 Pa. 352, 77 A.2d 364 (1951). In *LaCourse v. Kiesel, supra,* the Supreme Court stated:

> A material misrepresentation of an existing fact confers on the party who relies on it the right to rescind whether the defendants here actually knew the truth or not, especially where, as here, they had means of knowledge from which they are bound to ascertain the truth before making the representation. Misrepresentations made under such circumstances are fraudulent and have been variously called implied, constructive or legal fraud or fraud in Equity ... but even where innocently made, if material, are nevertheless grounds for rescission....

*Id.* 366 Pa. at 390, 77 A.2d at 880 (emphasis deleted). See: *National Building Leasing, Inc. v. Byler, supra* 252 Pa. Super. at 374, 381 A.2d at 965.

Rescission, of course, is not the only remedy available to a defrauded plaintiff. Where it is determined that rescission is not appropriate, or where plaintiff elects to affirm the contract, damages at law may be awarded. Such damages include "(a) the difference between the value of what [plaintiff] has received in the transaction and its purchase price or other value given for it; and (2) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation." Restatement (Sec-

ond) of Torts § 549.  See: *Neuman v. Corn Exchange National Bank & Trust Co., supra* 356 Pa. at 455, 51 A.2d at 766; *Cunningham v. Ray,* 263 Pa. 492, 497, 106 A. 884, 886 (1919); *Delahanty v. First Pennsylvania Bank, supra* 318 Pa.Super. at 117, 464 A.2d at 1257.

■  In the instant case, the buyers requested rescission, and the trial court determined that rescission was an appropriate remedy.  As we have previously suggested in this opinion, a fraudulently material misrepresentation was sufficiently established by the evidence.  Therefore, the trial court could properly order that the sale be rescinded.[4]

On appeal, the Silvermans ask not only that we reinstate the trial court's order of rescission, but also that we modify the trial court's order to take into account various events which occurred after post-trial motions had been argued. This we will not do.  Any request for additional damages accruing since trial must, in the first instance, be directed to the trial court.

The appellants also contend that the trial court should have awarded compensation for (1) the cost of repairing damage caused to the property by vandals; (2) costs incurred in their efforts to obtain a variance; and (3) prejudgment interest.  We disagree.  The trial court found, and the evidence supports, that the first two items of damage were not proximately caused by the fraud practiced by appellees. Moreover, pre-judgment interest was inappropriate.

The order of the post-verdict court is reversed, and the decree of the trial court is reinstated.

**4.**  Even if we were to determine that rescission was inappropriate in this case, the proper measure of damages would not be merely the difference between the value of the rear portion of the premises as zoned and the value that it would have had if it had been zoned as represented.  Rather, damages at law would be measured by the difference between the value of the *entire parcel* as zoned and the value that the *entire parcel* would have had if the rear portion thereof had been zoned as represented.  Any other measure of damages would fail to reflect the nature of the transaction between the parties.