**Frank SKURNOWICZ and Janice Johnson Skurnowicz, H/W, Appellants,**

v.

**Joseph W. LUCCI and Joan A. Lucci, H/W, Appellees.**

**Frank Skurnowicz and Janice Johnson Skurnowicz, H/W, Appellees,**

v.

**Joseph W. LUCCI and Joan A. Lucci, H/W, Appellants.**

Superior Court of Pennsylvania.

Argued April 3, 2002.

Filed May 8, 2002.

Jay M. Levin, Malvern, for Skurnowicz.

Renee L. Ferretti, Allentown, for Lucci.

Before: McEWEN, P.J.E.; STEVENS and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 Appellants Frank and Janice Skurnowicz and appellees Joseph and Joan Lucci both appeal from the lower court's July 12, 2001, order. This order denied all of appellees' post-trial motions, and granted appellants' post-trial motions in part and denied them in part. We affirm in part, vacate in part, and remand.

¶ 2 In early 1997, appellees, who then lived at 3980 Larkspur Drive, Allentown, Lehigh County, Pennsylvania (hereinafter the "property" or "premises"), placed their property on the market for $229,900. Appellees then reduced their asking price to $189,900 in June of that year. Appellants toured the premises several times; and on August 5, 1997, they entered into an agreement of sale for $189,000.

¶ 3 In July of that year, during one of appellants' visits to the property, Mr. Lucci told Mr. Skurnowicz that he and his wife had experienced no drainage or flooding problems while they lived there. At this time, Mr. Skurnowicz expressed his intent to build a large workshop on the northeast portion of the premises where he could restore antique automobiles. Mr. Lucci responded that the only potential problem to this plan was the need to contact the Lower Macungie Township Zoning Officer prior to beginning. He further emphasized that there had never been any drainage problems in the area where appellants wanted to build.

¶ 4 Prior to signing the agreement of sale, appellees prepared and gave appellants a sellers' property disclosure statement setting forth "all known material defects" with the property. Sellers' Property Disclosure Statement, 8/05/97. Paragraph 13(e) of the document specifically asked, "Do you know of any past or present drainage or flooding problems affecting the property?" *Id.* Appellees responded that they did not. *Id.*

¶ 5 At the time of signing this disclosure statement and speaking with appellants, appellees had personal knowledge that "during storms, stormwater ran behind the shed in the rear of the Premises, between the neighbors and their property and onto Fish Hatchery Road, before proceeding down Fish Hatchery Road." Trial Court Opinion, 2/16/01, at 4. Although the township installed a drainage system in 1985, appellees' conversations with their neighbors revealed that flooding problems persisted.

¶ 6 On September 11, 1997, after appellants took possession, a heavy rainstorm caused a portion of the property to become flooded. Similar problems occurred on at least nine separate occasions. In the fall of 1997, appellants sent appellees two letters informing them of these flooding problems and of appellees' misrepresentations. Although appellees received both correspondences, they did not respond.

¶ 7 Appellants then wrote another letter on December 15, 1997, asking appellees to contact them regarding this problem and advising them that until the matter was resolved, they were putting all future mortgage interest payments into an escrow account. After receiving no reply, appellants opened an escrow account where they deposited their payments.

¶ 8 On December 17, 1998, appellants filed a complaint in which they asserted claims for fraudulent misrepresentation, negligent misrepresentation, breach of implied warranty of habitability, and violation of Unfair Trade Practices Act (73 Pa.C.S. § 201.1, et seq.).[1] After a non-jury trial in the Lehigh County Court of Common Pleas, Judge Thomas A. Wallitsch found for appellants and entered a verdict requiring appellees to pay $29,948.75 in damages. Both parties filed post-trial motions. On July 12, 2001, the lower court denied appellants' motions in part, granted them in part, and added $2,507.66 in costs to the verdict. The court also denied all of appellees' post-trial motions. This timely appeal followed in which appellants raise the following issues:

1.) As the Court determined, as a matter of law, that the Appellees committed fraud against the Appellants, whether the Appellants are entitled to pre-judgment interest from the date that [the] contract was entered into between the parties on August 5, 1997 to the date the judgment was rendered in favor of the Appellants and against the Appellees?

2.) As the Court determined, as a matter of law, that the Appellees committed fraud against the Appellants whether the Appellants are entitled to the award of treble damages, interest, costs, expert fees and costs pursuant to The Unfair Trade Practices Act and Consumer Protection Law (73 P.S. 201–9.2(a)) ("UTPCPL")?

3.) As the Court determined, as a matter of law, that the Appellees committed fraud against the Appellants, whether the Appellants, as a matter of law, are entitled to the award of the diminution in the fair market value of the home?

4.) As the Court determined, as a matter of law, that the Appellees committed fraud against the Appellants, whether the Appellants, as a matter of law, are entitled to the award of all reasonable and foreseeable damages pursuant to The Unfair Trade Practices

---

1. Appellants dropped their claim for breach of the implied warranty of habitability before trial.

Act (73 P.S. 201–9.2(a)) ("UTPCPL") and the common law?

Appellants' Brief at 2. Appellees cross-appealed, setting forth the following issues:

I. Whether the trial court's conclusion that the [appellees] committed fraud and violated the consumer protection law constitutes an error of law?

II. Whether the trial court's award of actual damages is supported by the evidence?

III. Whether the trial court abused its discretion or committed an error of law in its award of attorney[']s fees?

IV. Whether appellants proved damages for diminution of the value of the Property?

V. Whether appellants are entitled to an award of treble damages, engineering fees or prejudgment interest?

Appellees' Brief at 4.

¶ 9 When examining a trial court's conclusions in a non-jury trial, our standard of review is well settled: "we [may] reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." *Wallace v. Pastore*, 742 A.2d 1090, 1092 (Pa.Super.1999). As fact finder, the judge has authority to weigh the testimony of each party's witnesses and to decide which are most credible. *Roman Mosaic and Tile Co. v. Thomas P. Carney, Inc.*, 729 A.2d 73, 76 (Pa.Super.1999).

¶ 10 Since it may be dispositive, we begin by addressing appellees' claim that the lower court erred as a matter of law in finding them liable for fraudulent misrepresentation and for violating the UTPCPL.

*Fraudulent Misrepresentation*

¶ 11 To succeed on a cause of action for fraudulent misrepresentation, a plaintiff must demonstrate the following elements by "clear and convincing evidence":

"(1) a representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and

(6) the resulting injury was proximately caused by the reliance."

*Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555, 560 (1999) (citation omitted). A misrepresentation will be deemed material where "it is of such character that had it not been made, ... the transaction would not have been consummated." *Sewak v. Lockhart*, 699 A.2d 755, 760 (Pa.Super.1997) (citation omitted).

¶ 12 After reviewing the record, we agree with the trial court's conclusion that appellees made a misrepresentation that was material to the parties' transaction. When asked on the sellers' property disclosure statement whether they knew of "any past or present drainage problems affecting the property," appellees answered no. Sellers' Property Disclosure Statement, 8/05/97, paragraph 13(e). The extensive testimony citing past and present flooding on the premises demonstrates that this response was an affirmative misrepresentation.

¶ 13 This representation was material to the underlying transaction; because if it were not made, appellants would not have entered into the agreement of sale. *See Sewak*, 699 A.2d at 760. Drainage and flooding problems present a serious inconvenience and eye sore even where they only affect an undeveloped back yard. Flooding is especially serious where, as

here, appellants intended to build a workshop for antique automobiles on that portion of the property. Given appellants' intention, misrepresenting this fact was material to the transaction.

¶ 14 Appellees argue that the record contains no evidence that they made this misrepresentation with the intent of misleading appellants into relying on it. As support for this proposition, they note that the trial court found that the misrepresentation "was not intended to injure [appellants]." Trial Court Opinion, 2/16/01, at 13. This position is without merit. The key inquiry is not whether there was an intent to injure, but whether there was an intent to deceive.

¶ 15 Establishing the intent requirement of fraud is far easier in a case, such as this, where the defendant makes an affirmative misrepresentation rather than conceals a material fact. In this case, appellees' intent to deceive appellants into relying on this misrepresentation is clear. They were asked directly about flooding problems on the sellers' property disclosure statement and lied. In addition, Mr. Lucci knew about Mr. Skurnowicz's plans to build a workshop in the backyard and told him again that there had never been any drainage problems.

¶ 16 The trial court's findings of fact show by clear and convincing evidence that appellants justifiably relied on appellees' misrepresentation, and that this reliance was the proximate cause of their damages. Mr. Skurnowicz decided to purchase the property after he was satisfied that the yard was suitable for his workshop. If he knew of the flooding problems on that part of the property, he would not have entered into the sale.

¶ 17 We conclude, therefore, that the trial court did not err in ruling that appellees were liable for fraudulently mis-

representing their knowledge of drainage problems. In addition, appellees misrepresented the fact that the roof had water damage. The court also properly determined that other misrepresentations appellees allegedly made were not "material" and therefore did not trigger liability.

*Violation of UTPCPL*

¶ 18 The record also clearly supports the trial court's ruling that appellees' misrepresentations violated the UTPCPL. An individual who purchases goods, including real estate, may bring a private action to recover damages caused by another's "act or practice declared unlawful" by the UTPCPL. 73 Pa.C.S. 201–9.2. *See also In re Zisholtz*, 226 B.R. 824, 831 (Bankr. E.D.Pa.1998).

¶ 19 Section 201–3 provides that it is unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce" as defined by section 201–2(i)–(xxi). In addition to twenty specifically enumerated practices, the Act provides that "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" constitutes an "unfair or deceptive act or practice." 73 Pa.C.S. § 201–2(4)(xxi). In order to establish a violation of this catchall provision, "a plaintiff must prove all of the elements of common-law fraud." *Sewak*, 699 A.2d at 761.

¶ 20 Appellees' misrepresentation, which served as the basis of their liability for fraudulent misrepresentation, also constitutes a violation of section 201–2(4)(xxi) of the UTPCPL. *Sewak* supports this conclusion, and appellants do not need to make any further showing.

*Real Estate Disclosure Act (RESDA)*

¶ 21 Appellants attempt to argue in their brief that appellees also violated RESDA and that they are entitled to damages on this ground as well. We hasten to

remind appellants that any issues not raised in a party's Rule 1925(b) Statement are waived. Since this issue does not appear in their statement of matters for appeal, we will not consider it.

### Damages

¶ 22 Now that we have determined that the trial court did not err in holding appellees liable for these two torts, we may consider each party's challenges to the damage award. In doing so, we are mindful that the issue of damages is "within the province of the fact-finder" who sits in the best position to evaluate the evidence and damage estimates. *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 464 A.2d 1243, 1257 (1983). This Court will disturb these findings only where "it clearly appears that the amount awarded resulted from partiality, caprice, prejudice, corruption or some other improper influence." *Id.*

1.) *Actual Damages*

¶ 23 Both parties dispute the amount of actual damages appellants suffered as a result of appellees' fraudulent misrepresentation. Where the aggrieved party decides not to rescind the contract, it may recover damages equal to: (1) "the difference in value between the real, or market, value of the property at the time of the transaction and the higher, or fictitious, value which the buyer was induced to pay for it;" and (2) the consequential damages suffered in reliance on the defendant's misrepresentation. *Sands v. Forrest*, 290 Pa.Super. 48, 434 A.2d 122, 124 (1981) (citation omitted); *Silverman v. Bell Sav. & Loan Ass'n*, 367 Pa.Super. 464, 533 A.2d 110, 116 (1987). The calculation of damages does not need to be "determined with entire accuracy" or "mathematical precision," but it must rest on a

reasonable factual basis and not conjecture. *Delahanty*, 464 A.2d at 1257–58.

¶ 24 After reviewing the evidence and considering the damage estimates presented, we affirm the trial court's award of actual damages. The proper measure of damages here is the difference between the property's actual value and the misrepresented value. The trial court refused to award damages for diminished property value, because it concluded that appellants failed to establish a diminished value of the property.

¶ 25 While appellants submitted a calculation of the diminished value, they based it on the "erroneous assumption that a detention pond [occupying the whole yard] is the necessary remedy" for the drainage problem. Trial Court Opinion, 2/16/01, at 11–12. Judge Wallitsch rejected that much costlier solution in favor of the opinion of the court-appointed expert, J. Scott Pidcock, who testified that the best solution was to fill and grade the area where appellants want to build the workshop. Appellants submitted no other calculation.

¶ 26 The trial court did, however, award appellants $7,000 in consequential damages, which they incurred "as a direct and proximate result of [appellees'] fraudulent acts and/or omissions." *Id.* at 8. These damages include the costs to repair the roof ($2,000) and the costs to fill and grade the yard ($5,000). We agree that these damages resulted directly from appellees' misrepresentation and therefore are proper.

¶ 27 Appellees ask this Court to reduce the damages for filling and grading, because part of Mr. Pidcock's estimate was not related to their misrepresentation and would have been incurred regardless. After reviewing his testimony, we find no support for this position.

## 2.) *Attorney Fees and Expert Fees*

¶ 28 Appellees further challenge the $21,945 the lower court awarded appellants in attorney fees under the UTPCPL. Once a plaintiff establishes a violation of the UTPCPL and succeeds in an action under section 201–9.2, he may recover "costs and reasonable attorney fees." 73 P.S. § 201–9.2; *Wallace v. Pastore*, 742 A.2d 1090, 1093 (Pa.Super.1999). The trial court has discretion in awarding attorney fees, and we will not disturb such an award unless it abuses that discretion. *Sewak*, 699 A.2d at 762.

¶ 29 In exercising its discretion, the lower court must consider:

(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the client or clients from the services, and (4) The contingency or certainty of the compensation.

*McCauslin v. Reliance Fin. Co.*, 751 A.2d 683, 685–86 (Pa.Super.2000) (citing *Sewak*, 699 A.2d at 762). While the amount of a verdict "should not serve as a cap … on the amount of counsel fees awarded," *Sewak*, 699 A.2d at 763, there must be a "sense of proportionality between an award of damages and an award of attorney's fees." *McCauslin*, 751 A.2d at 686.

¶ 30 Where the court awards attorney fees that exceed twice the amount of damages, a question is "certainly raise[d] … whether the fee award was 'reasonable' or not." *Id.* In *McCauslin*, this Court vacated an award of $12,000 in attorney fees and costs where damages totaled only $5,000. *Id.* The Court reasoned that unless it were shown that the successful party understood counsel's expectation for fees up front, these fees were neither rea-

sonable nor consistent with the purpose of the UTPCPL. *Id.*

¶ 31 The trial court's opinion in this case does not show that the court considered any of the factors set forth in *McCauslin* in awarding appellants $21,945 in attorney fees. The attorney fees awarded here are three times the amount of damages appellants sustained. After considering these four factors and this Court's opinion in *McCauslin*, we determine that these attorney fees were not reasonable.

¶ 32 This conclusion is buttressed by the trial court's own explanation of its decision. It reasoned that appellees did not respond to appellants' attempts to reach an "amicable resolution" and that appellants, therefore, were forced to file suit. We agree with appellees that fees awarded on this basis appear to be punitive in nature and, therefore, are an abuse of discretion. Therefore, we vacate the award of attorney fees and remand for reconsideration of this issue in light of the above factors.

¶ 33 We affirm the trial court's refusal to award appellants the cost of their experts' fees. These fees were spent to develop an expensive plan that did not offer a reasonable solution to the drainage problem. Therefore, they were unreasonable and improper under the UTPCPL.

## 3.) *Treble Damages*

¶ 34 Although attorney fees may not be punitive, the UTPCPL gives the trial court discretion to award treble damages, which are punitive in nature. 73 Pa.C.S. 201–9.2(a). The lower court ruled that these damages were not appropriate, because appellees' conduct was not "reckless." Trial Court Opinion, 2/16/01, at 13. Appellants argue that the court relied on the incorrect legal standard in considering this issue and therefore abused its discretion. We agree.

¶ 35 The trial court below cited *Johnson v. Hyundai Motor America*, 698 A.2d 631

(Pa.Super.1997), for the proposition that appellees must have engaged in "reckless conduct" before treble damages may be imposed. We do not agree. *Johnson* specifically dealt with a breach of contract claim under UTPCPL, which unlike other violations of the Act does not typically involve fraudulent conduct. *See id.* at 638. In contract cases, punitive damages are generally not awarded; therefore, the defendant's actions must show some "reckless indifference to the rights of others" to warrant such damages. *See id.* at 639.

¶ 36 Here, appellees' fraudulent behavior has already been established and the Act requires no further showing of recklessness. Since the trial court applied the incorrect standard, it abused its discretion. We remand so that the lower court may reconsider this issue. The trial court will still have discretion and may refuse to award treble damages.

4.) *Prejudgment Interest*

■ ¶ 37 Appellants finally argue that the lower court erred in refusing to award them prejudgment interest on the amount of damages. We do not agree. Only a plaintiff, who succeeds on a contract claim, is entitled to prejudgment interest as a matter of right. *Fernandez v. Levin,* 519 Pa. 375, 548 A.2d 1191, 1193 (1988). Although appellants initially brought a claim for breach of implied warranty of habitability, they withdrew it and were successful solely on tort theories of liability. Therefore, they are not entitled to prejudgment interest.

¶ 38 Order affirmed in part and vacated in part. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.