## Beecham v. American Life and Casualty Insurance Company

*Kimberly D. Borland,* for plaintiffs.
*Mark H. Scoblionko,* for defendant.

MINORA, *J.,* January 17, 2003—This matter comes before the court by way of a motion for summary judg-

ment filed by American Life and Casualty Insurance Company. Plaintiffs William and Dorothy Beecham initiated this action to recover compensatory and punitive damages allegedly incurred by them as a result of American's conduct. In short, the Beechams claim that American did not notify them that it was terminating the employment of its agent, Patrick J. Idaspe, and had American done so, the Beechams would not have continued to deal with Mr. Idaspe. While American admits that it did not notify the Beechams of Mr. Idaspe's termination, American's motion for summary judgment asserts that it had no legal duty to do so. At issue then, is whether any genuine issue of material fact exists.

As each party has submitted its brief and oral arguments were heard by this court on August 20, 2002, this matter is now ripe for disposition. For the reasons discussed below, we find that genuine issues of material fact exist, and therefore, defendant is not entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is denied.

## FACTUAL HISTORY

On or about March 31, 1993, American entered into an agent's contract with Mr. Patrick J. Idaspe. As an independent contractor, Mr. Idaspe was to sell life insurance contracts and annuity policies which were underwritten by American. The Commonwealth of Pennsylvania issued Mr. Idaspe an agent's license on June 27, 1994; that license reflected Mr. Idaspe's authority to act as an agent on behalf of American.

Mr. Idaspe invited the Beechams to attend one of his seminars; however the Beechams forgot about the semi-

nar and did not attend. Subsequently, in September 1994, Mr. Idaspe and the Beechams mutually agreed to a meeting at the Beechams' home which lasted approximately three to four hours. During his visit, Mr. Idaspe told the Beechams about annuity contracts offered by American. In October 1994, the Beechams purchased an annuity contract from Mr. Idaspe for a single premium charge of $176,243. It should be noted that the Beechams bought this policy from Mr. Idaspe without calling American or asking Mr. Idaspe for any references.

At some point, American discovered that Mr. Idaspe had had problems with another company, Beneficial Standard, where he made and used fake company letterhead. Consequently, American notified Mr. Idaspe, via a letter dated June 12, 1995, that his contract would be terminated, effective June 27, 1995. During this time period, Jack D. Aiken, an insurance wholesaler who facilitated the contractual relationship between American and Mr. Idaspe, wrote a letter to American and suggested that Mr. Idapse's business be placed on a watch list.

In late 1995, after his termination, Mr. Idapse advised the Beechams to cancel the American annuity policy and transfer those funds to another product underwritten by another company; the Beechams followed Mr. Idapse's advice. At the request of the Beechams, American canceled the annuity policy and issued a check to the Beechams in the amount of $176,933, the amount in the annuity less the penalty for an early withdrawal.

For some time thereafter, the Beechams received periodic interest statements from an organization named Equity Service Company. After several months of not

receiving these interest statements, the Beechams telephoned Mr. Idaspe at his home. Subsequently, the Beechams learned that Mr. Idaspe had taken his own life and that the proceeds from the old American annuity policy were lost.

The Beechams allege that despite its knowledge of fraud investigations involving Mr. Idaspe, American did not inform its policyholders, namely the Beechams, of Mr. Idaspe's termination or possible fraudulent conduct. Therefore, the Beechams assert that American is liable for not informing them that Mr. Idaspe had been terminated; the Beechams claim that they would not have given him their money nor followed his advice had they known of his termination.

Consequently, the Beechams filed a complaint against American on March 4, 1999 seeking relief under several theories. The claims of negligence and violation of the unfair insurance practices act were dismissed by an order of this court dated September 2, 1999, thereby sustaining certain preliminary objections of American. The claims of common-law fraud and deceit, violation of the Unfair Trade Practices and Consumer Protection Law, breach of fiduciary duty and punitive damages remain pending against American.

After discovery was conducted, American, on April 1, 2002, has filed the present motion for summary judgment.

## DISCUSSION

### I. *Standard of Review*

Before examining the instant matter, we must first set forth the standard of review for summary judgment. Penn-

sylvania Rule of Civil Procedure 1035.2 governs the appropriateness of summary judgment:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

In other words, once the pleadings are closed, a party may move for summary judgment in two situations: first, when there is no genuine issue of fact that may be established through additional discovery, or second, if, after the completion of discovery, the party bearing the burden of proof has failed to produce evidence of the essential facts that would warrant the issues to be submitted to a jury. Pa.R.C.P. 1035.2; *Fazio v. Fegley Oil Co. Inc.,* 714 A.2d 510, 512 (Pa. Commw. 1998). Further, under the revised rules, a court may grant summary judgment when it is clear and free from doubt that such judgment is appropriate as a matter of law. *Boyer v. Walker,* 714 A.2d 458, 459 (Pa. Super. 1998); *Cappelli v. York Operating Co. Inc.,* 711 A.2d 481, 483 (Pa. Super 1998) (en banc).

In any event, when determining whether to grant a motion for summary judgment, the court must view all of the evidence included in the record in a light most favorable to the non-moving party; this includes any reasonable inferences that may be drawn from the evidence in the record. *Hess v. Fuellgraf Electric Co.,* 350 Pa. Super. 235, 237-38, 504 A.2d 332, 333-34 (1986), quoting *Schacter v. Albert,* 212 Pa. Super. 58, 62, 239 A.2d 841, 843 (1968). *Sebelin v. Yamaha Motor Corp., USA,* 705 A.2d 904, 907 (Pa. Super, 1998). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Hess,* 350 Pa. Super. at 237, 504 A.2d at 333-34 (1986) quoting *Schacter,* 212 Pa. Super. at 62, 239 A.2d at 843 (1968).

Even in a case where a genuine issue of material fact exists, Rule 1035.3(a) requires that "the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within 30 days after service of the motion identifying" either genuine issues of fact which should be submitted to the jury or essential evidence contained in the record which the moving party claims does not exist. Pa.R.C.P. 1035.3(a); *Henninger v. State Farm Insurance Co.,* 719 A.2d 1074, 1076 (Pa. Super. 1998). When a moving party properly supports its motion for summary judgment with corroborating evidence, the adverse party cannot rely on its pleadings; within 30 days of service of the motion, the non-moving party must identify specific evidence contained within their depositions, answers to interrogatories, admissions or affidavits which supports its assertion that there is a genuine issue of material fact. *Henninger,* 719 A.2d at

1076 (Pa. Super. 1998); *Sovich v. Shaughnessy,* 705 A.2d 942, 944 (Pa. Commw. 1998) citing *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d. 205, 206, (1991).Henninger (1991).

## II. *Defendant's Motion for Summary Judgment*

American makes several arguments in support of its motion for summary judgment, however, below we will discuss only those most pertinent to the counts of the complaint which are currently at issue. American claims that, with respect to their claim of common-law fraud and deceit, the Beechams have not pled any facts sufficient to support the claim that American's failure to disclose the termination of Mr. Idaspe was intentional or fraudulent. While paragraph 50 of the complaint alleges that American's behavior was "deceptive," American contends that that conclusory statement alone does not support the Beechams' claim of common-law fraud and deception. American further argues that no potential evidence would support such allegations.

In Count V of the complaint, the Beechams charge American with breach of fiduciary duty. American argues that Pennsylvania case law specifically holds that no common-law fiduciary responsibility exists between an insurance company and its insured. American admits that in certain contexts, such as those involving the policy's provisions, a statutory bad faith action may exist; however, American argues that the Beechams are asserting a tort claim, as opposed to a claim under the insurance contract, and thus such claim should be dismissed as it is not proper under Pennsylvania law.

American explains that in order to obtain relief on a claim for violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), one must demonstrate misfeasance, rather than nonfeasance, the latter of which is not actionable. American goes on to instruct that misfeasance includes fraud or intentional misconduct, which they assert, do not exist in the matter at hand, as the common-law elements of fraud cannot be proven.

In response to the Beechams' claim for punitive damages, American instructs that if, in a particular situation, no cause of action for compensatory damages exists, then there can be no claim for punitive damages; American asserts that no cause of action for compensatory damages exists, and consequently the Beechams' claim for punitive damages should be dismissed. American also submits that there was no egregious or outrageous behavior in the instant matter, and therefore punitive damages are not merited.

### III. *Plaintiff's Response to Defendant's Motion for Summary Judgment*

The Beechams cite case law stating that false representation may be accomplished through either words, conduct, or the absence thereof, their argument suggests that American's failure to disclose Mr. Idaspe's termination can be construed as intentional misrepresentation. The Beechams also claim that further investigation may provide additional evidence of common-law fraud and deception.

The Beechams appear to recognize American's case law finding no fiduciary duty between an insurance com-

pany and its insured. The Beechams rest their argument on the distinction between a relationship involving an insurance company and its insured and the one involving the Beechams and American, wherein the Beechams placed their money in an account to be held by American. Based on that distinction, the Beechams claim that they were owed a fiduciary duty, and American's actions, or inactions, consititued a breach of said duty.

The Beechams argue the American's failure to disclose information which is pertinent to the dealings between the two parties would, and in fact did, cause a likelihood of confusion or misunderstanding, and such failure is sufficient to bring a claim under the UTPCPL. Without acknowledging the veracity of American's argument requiring the demonstration of the common-law elements of fraud in order to recover under the UTPCPL, the Beechams refer to their previous argument that those elements are present in the current record and that further investigation may produce additional evidence as to American's alleged fraud. Further, the Beechams assert that American's decision not to inform them of Mr. Idaspe's termination and their findings upon subsequent investigation of his business dealings may even amount to intentional misfeasance.

While the Beechams agree with American's statement of the law concerning the required existence of an action for compensatory damages in order to prevail on a punitive damages claim, they argue that there are, in fact, claims for compensatory damages contained in the common-law fraud and deceit, unfair trade practices and consumer protection law and breach of fiduciary duty counts of the complaint. The Beechams assert that each of those

counts alleges reckless indifference, which is conduct for which punitive damages may be awarded.

## IV. *Analysis*

In the interest of completeness, we will address the first three arguments made in American's motion for summary judgment. These arguments have not yet been addressed, nor will they be addressed hereinafter, however we deem it necessary to provide an explanation as to the deletion of said arguments from this discussion. American's first three arguments deal with ordinary legal duty, legal cause and damages for alleged negligent conduct, respectively. In September 1999, this court dismissed the Beechams' claim for negligence. Therefore, as these three arguments sound in defense to a negligence claim which has been dismissed, we need not discuss them on the merits.

The elements of fraud include a misrepresentation, a fraudulent utterance thereof, an intention that the recipient will be induced to act, justifiable reliance by the recipient and damage to the recipient as a proximate result. If the misrepresentation is made innocently, it is only actionable if it relates to a matter material to the transaction. A misrepresentation is considered material when it has caused the recipient to enter into a transaction which he would not otherwise have entered. *Delahanty v. First Pennsylvania Bank N.A.,* 318 Pa. Super. 90, 108, 464 A.2d 1243, 1252 (1983); *Silverman v. Bell Savings & Loan Association,* 367 Pa. Super. 464, 470, 533 A.2d 110, 113 (1987); *Bortz v. Noon,* 556 Pa. 489, 500-501, 729 A.2d 555, 561 (1999); Restatement (Second) Torts §552. In short, fraud is proven when it is

demonstrated that a false representation was made knowingly, in conscious ignorance of the truth or recklessly without caring whether it is true or false. *Delahanty,* 318 Pa. Super. at 109, 464 A.2d at 1252.

It is well settled that the misrepresentation need not be in the form of a positive assertion to be actionable; it can be any artifice by which by which a person is deceived to his advantage. *Delahanty,* 318 Pa. Super. at 107, 464 A.2d at 1252; *Silverman,* 367 Pa. Super. at 469, 533 A.2d at 113. As illustrated by the case law, "the deliberate nondisclosure of a material fact amounts to a culpable misrepresentation no less than does an intentional affirmation of a material falsity." *Delahanty,* 318 Pa. Super. at 108, 464 A.2d at 1252; *Silverman,* 367 Pa. Super. at 470, 533 A.2d at 113.

The Beechams' claim for fraud does assert each of the elements required to prevail on such a cause of action. It is not disputed that American has made no affirmative act of misrepresentation, however based upon the facts, a reasonable jury may find that American's nondisclosure of Mr. Idaspe's termination constitutes a culpable misrepresentation. Even assuming that the alleged misrepresentation was innocent, the Beechams claim that it was regarding a matter material to the transaction. The Beechams stated in their complaint that had they known what American knew about Mr. Idaspe, they would not have entered the transaction at issue. Whether that is true and whether American's behavior was intentional or reckless are material questions for the jury to decide.

American also questions whether it had any duty to inform the Beechams of the termination or of the information that they had gathered concerning Mr. Idaspe's

business practices. The Superior Court has said that fraud can be demonstrated by the concealment of facts which *"should have been disclosed,"* which causes another to act to his own detriment. *Delahanty,* 318 Pa. Super. at 108, 464 A.2d at 1252. (emphasis added) That court generally applies a negligence standard to determine the existence of such a duty to disclose. For example, courts have found that in a relationship between a buyer, a seller and a broker, the broker is in a better position to verify the statements of the seller than is the buyer. *Bortz v. Noon,* 556 Pa. at 502, 729 A.2d at 562.This court finds that American did owe the Beechams a duty to disclose based upon the above referenced real estate scenario. American had access to Mr. Idaspe's clients, they knew of his allegedly deceptive practices and they certainly knew of his termination; American was clearly in a better position than were the Beechams. The Beechams are not without some degree of fault, they too had a responsibility to verify Mr. Idaspe's credibility, however, from the instant facts, it appears as though American should have disclosed whatever information they had to Mr. Idaspe's clients, particularly his termination.

Several courts of authority have held that no fiduciary duty exists between an insurance company and its insured. *Chenot v. Metropolitan Life Insurance Company,* 47 D.&C.4th 332, 335 (Butter Cty. 2000). However, the Beechams' argument on this count rests in the distinction between their relationship with American and the relationship between an insured and the insurance company.

A fiduciary relation in which a duty exists is "any relation existing between parties to a transaction wherein

one of the parties is bound to act with the utmost good faith for the benefit of the other party and can take no advantage to himself from his acts relating to the interest of the other party." *Connors v. Metropolitan Life Insurance Co.,* 35 D.&C.4th 58, 60 (Fayette Cty. 1997). As illustration, the *Connors* court tells us that such a relation exists when one occupies a position of advisor toward another, and as such reasonably inspires confidence that he will act for the other's interest. *Id.,* citing *Frowen v. Blank,* 493 Pa. 137, 146, 425 A.2d 412, 417 (1981).

An annuity policy carried by a particular company requires more attention and input than does a life insurance policy. While carrying an annuity policy for the benefit of its recipients, the company must exercise its best judgment in determining how to protect and increase the recipients' investment. This court believes that this distinction mandates a closer relationship between the beneficiary of an annuity and the company carrying that annuity than is mandated between an insured and the insurance company; the annuity carrier must act for the benefit of the policyholder. As such, we find that a fiduciary relationship does exist when an annuity, rather than a life insurance policy, is involved.

In order to prevail on a claim sounding in the UTPCPL, one must demonstrate misfeasance, rather than nonfeasance. *Gordon v. Pennsylvania Blue Shield,* 378 Pa. Super. 256, 264-65, 548 A.2d 600, 604 (1988); 73 P.S. §201-1 et seq. The *Gordon* court found that an improper performance of a contracted obligation constitutes misfeasance, while the mere failure to perform amounts to

nonfeasance, the latter of which is not actionable. *Gordon,* 378 Pa. Super. at 264, 548 A.2d. 604.

American argues that the Beechams' complaint is based upon an omission, the nondisclosure of Mr. Idaspe's termination and past business dealings. On a superficial level, that may seem to indicate nonfeasance. However, we believe that a fraudulent omission, such as the type that the Beechams are alleging, is an act of misfeasance rather than nonfeasance, and as such, is actionable under the UTPCPL.

Assuming an act of misfeasance exists, a plaintiff must also establish that the defendant's representation is false, it deceives or may deceive, it is likely to make a difference in the purchasing decision and there was a reliance on those misrepresentations. *Fay v. Erie Insurance Group,* 723 A.2d 712, 714 (Pa. Super. 1999). In other words, the plaintiff is required to demonstrate that the defendant's misfeasance satisfies the elements of common-law fraud.

Here, again, American argues that there is no viable basis for a claim of common-law fraud. As stated above, this court finds that the Beechams have sufficiently pled the elements of fraud in a manner appropriating submission to the jury.

Under long-standing Pennsylvania law, "the right to punitive damages is a 'mere incident to a cause of action.'" *Delahanty,* 318 Pa. Super. at 128, 464 A.2d at 1263, quoting *Hilbert v. Roth,* 395 Pa. 270, 276, 149 A.2d 648, 652 (1959). However, an award of punitive damages can only be made where actual damages have been suffered. *Delahanty,* 318 Pa. Super. at 128, 464 A.2d at

1263. The Supreme Court of Pennsylvania has held that a plaintiff may receive punitive damages even in the absence of a physical injury. *Chenot,* 47 D.&C.4th at 337.

Punitive damages are awarded to punish "outrageous conduct," stemming from the defendant's bad motive or reckless indifference to the rights of others. *Chenot,* 47 D.&C.4th at 337; *Delahanty,* 318 Pa. Super. at 127-30, 464 A.2d at 1262-63. Therefore, aside from establishing the commission of a tort, a plaintiff must demonstrate the defendant's willful, wanton or reckless behavior in order to secure an award of punitive damages. The question of whether punitive damages are warranted is one for the fact-finder. *Delahanty,* 318 Pa. Super. at 129, 464 A.2d at 1263.

In this instance, the Beechams have clearly not suffered any physical injuries; however they do allege the loss of substantial amount of money. Therefore, it is the jury's responsibility to determine whether American's conduct was "outrageous" or "reckless."

### V. *Conclusion*

Based on the foregoing, this court finds that material questions of fact exist and that each count of the complaint is appropriate for submission to a jury. Accordingly, defendant's motion for summary judgment is denied on all bases and an appropriate order follows.

### ORDER

And now, to wit, January 17, 2003, it is hereby ordered and decreed that the defendant's motion for summary judgment is denied on all bases.