J-S46034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PARITOSH WATTAMWAR AND RANJANA SINGH-WATTAMWAR, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| FOX & ROACH LP D/B/A BERKSHIRE HATHAWAY HOMESERVICES, FOX AND ROACH, REALTORS, AND BERKSHIRE HATHAWAY HOME SERVICES FOX AND ROACH, REALTORS AND LASZLO GARAY | : | |
| | : | |
| | : | No. 3112 EDA 2019 |

Appeal from the Order Entered September 25, 2019
in the Court of Common Pleas of Chester County
Civil Division at No(s):  No. 17-8905

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:　　　　　　**FILED JANUARY 12, 2021**

Paritosh Wattamwar and Ranjana Singh-Wattamwar, husband and wife (collectively, "the Wattamwars"), appeal from the entry of summary judgment against them, and in favor of Fox & Roach LP d/b/a Berkshire Hathaway Homeservices, Fox and Roach, Realtors, and Berkshire Hathaway Home Services Fox and Roach, Realtors (collectively, "Fox & Roach"), and Laszlo Garay ("Garay") (collectively, "Defendants").  We affirm.

In its Order entered on September 25, 2019, the trial court set forth the factual history underlying this appeal as follows:

These consolidated actions[1] arise out of the sale and purchase of real property in "Pickering Crossing," a residential community comprised of newly constructed carriage and twin homes. Pickering Crossing is located near the intersections of State Route 29 and Charlestown Road in Charlestown Township, Chester County. It sits directly adjacent to a pre-existing asphalt plant operated by a construction company known as Allen Myers.

Each of the Plaintiffs … purchased a new carriage home in [] Pickering Crossing. Defendants Fox & Roach and [] Garay were the listing broker and agent, respectively, for Southdown Homes, the owner and developer of Pickering Crossing.

Plaintiffs allege that, prior to purchasing their homes, they each inquired with [] Garay about the noise generated by trucks and equipment operating on the asphalt plant adjacent to Pickering Crossing. According to Plaintiffs, Garay advised each of them that the plant would close within two years; they also assert that Garay failed to inform them that the plant operated on a 24-hour basis.

Plaintiffs entered into agreements of sale and made settlement on the properties in 2015, and 2016. After moving in, they learned that the asphalt plant would remain open indefinitely and that it operated on a 24-hour basis. Plaintiffs characterize the noise generated by the plant as "extreme," "substantial," and "continuous," and claim that it reduces the value of their respective properties.

On September 15, 2017, Plaintiffs, as homeowners, filed [C]omplaints against, *inter alia*, Garay and Fox & Roach alleging claims for intentional fraud and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[2] Plaintiffs averred that, at the time they each inquired of Garay about the noise at the asphalt plant, [they each] knew that the

---

[1] Previously, the Wattamwars' action was consolidated with actions filed by Mary E. Rush, Jose and Julie Robertson, husband and wife ("the Robertsons"), and Mary Kathleen Makowka (collectively, "Plaintiffs"). The cases were deconsolidated prior to the instant appeal.

[2] ***See*** 73 P.S. §§ 201-1 to 201-9.3.

plant would not close within two years[,] and that it operated on a 24-hour basis. Plaintiffs assert that Garay misrepresented this information to them in order to induce them to purchase a home in Pickering Crossing.

Garay and Fox & Roach … moved for summary judgment against [Plaintiffs] on July 11, 2019 ….

Trial Court Opinion, 9/25/19, at 2-3 n.1 (footnotes added).

In its December 30, 2019, Opinion, the trial court set forth the procedural history of the underlying proceedings, which we adopt for the purpose of this appeal. *See* Trial Court Opinion, 12/30/19, at 2-7.

The trial court entered summary judgment in favor of Defendants and against the Plaintiffs, including the Wattamwars, on September 25, 2019. Thereafter, the Wattamwars filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

The Wattamwars present the following claims for our review:

[1.] Whether the [trial court's] granting of summary judgment was an error of law and/or an abuse of discretion because[,] even if the opinion of the appraiser[,] Donald Garfinkel [("Garfinkel"),] on diminished value was disallowed[, the Wattamwars] would still be entitled to a verdict for nominal damages[,] as set forth in **Sands v. Forrest**, … 434 [A.2d] 122, 124 ([Pa. Super.] 1981)[,] as well as punitive damages and attorneys' fees under the [UTPCPL]?

[2.] Whether the [trial court's] granting of summary judgment was an error of law and/or an abuse of discretion because[,] even if the opinion of the appraiser[, Garfinkel,] on diminished value was disallowed[, the Wattamwars,] as the owners of the real property, were competent to testify at trial as to their opinion of the value of the real property[,] and compare that value to what was paid for the real property?

[3.] Whether the [trial court's] granting of summary judgment was an error of law and/or an abuse of discretion as the opinion on diminished value of [] Garfinkel should be considered by the jury[,] given that [the Wattamwars] were told that the plant would close within two years, it was not until they learned [that] the plant was not closing that they [became] aware of their damages[,] and the true measure of damages should be what they were at the time of the appraisal[,] not at the time of settlement[,] because if the real property had diminished value at the time of settlement but increased substantially by the time of trial[,] it could not be said that [the Wattamwars] were damaged at trial and the measure of damages should be as of the date of trial?

Brief for Appellants at 6-7 (citation and some capitalization omitted).

We will address the Wattamwars' first two claims together, as the trial court did so in its Opinion. The Wattamwars first claim that the trial court improperly entered summary judgment against them because, even if the opinion of their appraiser was disallowed, they would still be entitled to nominal damages, as well as punitive damages, costs, and attorneys' fees, under the UTPCPL. Brief for Appellants at 16. The Wattamwars asserts that they did not waive this issue, as they had requested the following damages in their Complaint:

a. [E]xtreme and substantial interference with the use and enjoyment of their real property;

b. Extreme and substantial loss in the value of their property.

*Id.* According to The Wattamwars, they averred "punitive damages, costs, damages in excess of $50,000.00 and attorneys' fees under violations of the UTPCPL[,] and punitive damages, costs and damages in excess of $50,000.00 for [f]raud." *Id.* at 17. The Wattamwars direct our attention to their Answer

to Defendants' Motion for summary judgment, wherein they "argued [that] summary judgment was improper because they had 'established damages.'" *Id.*

The Wattamwars rely upon the appraisal of Garfinkel, who opined that the diminution of value of the property, based upon the noise generated from the asphalt plant, "amounts to $130,000.00." *Id.* The Wattamwars assert that, in their Answer to the Motion, they cited the case of ***Sivlerman v. Bell Sav. & Loan Ass'n***, 533 A.2d 110, 116 (Pa. Super. 1987), and now argue that the diminution in value of $130,000.00 is obviously a "pecuniary loss" authorized as damages under ***Silverman***. Brief for Appellants at 17-18.

The Wattamwars also argue that they are entitled to nominal damages. *Id.* at 18-19. Quoting ***Sands***, The Wattamwars contend that the failure to prove damages is not determinative of the issue of an alleged liability for fraud and deceit: "If plaintiffs were entitled to a verdict on the cause of action alleged, but were unable to prove damages, they were nevertheless entitled to a verdict for nominal damages." *Id.* at 19 (quoting ***Sands***, 434 A.2d at 124). The Wattamwars posit that they were not required to use "magic words," or specifically plead "nominal damages," nor were they required to request an amendment to do so in response to Defendants' Motion for summary judgment. *Id.* at 19. Pursuant to ***Sands***, the Wattamwars argue, when the Garfinkel Appraisal was disallowed, they were still entitled to a jury trial on nominal damages. *Id.*

In their second claim, the Wattamwars argue that even if the opinion of their expert appraiser on the issue of diminished value was disallowed, they could testify regarding the value of the property, as its owners. Brief for Appellants at 20. The Wattamwars dispute the trial court's assessment that they were not qualified to give this valuation testimony, based upon their lack of personal knowledge of that value at the time of the transaction. *Id.* at 21. The Wattamwars argue that during their time owning the property, "they became intimately familiar with their property, especially with the noise from the adjacent plant coming into the house 24 hours a day." *Id.*

The Wattamwars further posit that, to establish damages for fraud, they were not required to establish the property's value as of the date of the transaction. *Id.* at 22. Rather, the Wattamwars claim a "pecuniary loss" as a consequence of their reliance upon the Defendants' misrepresentations. *Id.* According to the Wattamwars, "[t]his is clearly a pecuniary loss suffered otherwise[,] as a consequence of the recipient's reliance upon the misrepresentation," as is set forth in the Restatement (Second) of Torts § 549. Brief for Appellants at 22. The Wattamwars argue that, if they testify regarding their belief as to the value of the property, and if that amount is less than what they had paid, and if they attribute the loss to the noise from the adjacent plant, they have established a pecuniary loss through competent evidence. *Id.* at 22-23.

Regarding their UTPCPL claim, the Wattamwars assert that they can establish an "ascertainable loss" through the testimony of their expert appraiser, Garfinkel. *Id.* at 23. The Wattamwars assert that Garfinkel opined that the diminution of the value of the property, based upon the excessive noise, is $130,000.00. *Id.* This evidence, the Wattamwars argue, coupled with their own testimony, constitutes competent evidence of ascertainable losses and actual damages. *Id.*

Our standard of review of an appeal from an order granting summary judgment is well settled:

> Summary judgment may be granted only in the clearest of cases where the record shows that there are no genuine issues of material fact and also demonstrates that the moving party is entitled to judgment as a matter of law. Whether there is a genuine issue of material fact is a question of law, and therefore[,] our standard of review is *de novo* and our scope of review is plenary. When reviewing a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party.

*Reason v. Kathryn's Korner Thrift Shop*, 169 A.3d 96, 100 (Pa. Super. 2017) (internal citation omitted).

The entry of summary judgment is governed by Pa.R.C.P. 1035.2, which provides as follows:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. Pennsylvania Rule of Civil Procedure 1035.3 provides, in relevant part, that

the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying

(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or

(2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.C.P. 1035.3(a)(1)-(2), *see also Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership*, 764 A.2d 1100, 1105 (Pa. Super. 2000) (stating that, "[b]ecause, under [Pa.R.C.P.] 1035.3, the non-moving party must respond to a motion for summary judgment, he or she bears the same responsibility as in any proceeding, to raise all defenses or grounds for relief at the first opportunity.").

In its Opinion, the trial court addressed the Wattamwars' first two claims together, and concluded that they are waived, and additionally lack merit. *See* Trial Opinion, 12/30/19, at 8-12. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis with regard to the Wattamwars' first two claims, *see id.*, with the following addendum.

The Wattamwars' reliance on this Court's holding in **Sands** is misplaced. In **Sands**, the appellants purchased a "farm property" in Berks County for $85,000. **Sands**, 434 A.2d at 123. The purchase allocated a purchase price of $60,000.00 for the real property, and $25,000.00 for certain personalty. **Id.** However, after appellants took possession of the property, they found the property in need of repair, and certain items of personalty missing. **Id.** The appellants filed an action for fraudulent misrepresentation, claiming damages in the amount of $40,000.00. **Id.** At trial, when the appellants sought to introduce the cost of repairs and replacement of the missing items, appellees objected, claiming that such items are not a proper measure of damages. **Id.** at 24. The trial court sustained the objection. **Id.** However, appellants then moved to amend their complaint, and offered to produce evidence regarding the value of the property at the time they took possession. **Id.** The trial court denied the motion. **Id.**

On appeal, this Court recognized that the trial court correctly determined the proper measure of damages, but erred when it directed a verdict in appellees' favor. **Id.** This Court stated that, "[i]f [appellants] were entitled to a verdict on the cause of action alleged, but were unable to prove damages, they were nevertheless entitled to a verdict for nominal damages." **Id.** This Court further concluded that the appellants should have been permitted to amend their complaint to allege a correct measure of damages. **Id.**

This case, by contrast, is in a markedly different procedural posture than that presented in **Sands**. Here, the Defendants filed a Motion for summary judgment, wherein they claimed that the Wattamwars had failed to present the evidence of damages necessary to sustain their causes of action. **See** Trial Court Order, 9/25/19, at 2 n.1 (summarizing Defendants' contention that all of the Plaintiffs had failed to produce evidence of damages, because the record does not disclose the market values of their homes on the dates of purchase). The Wattamwars failed to assert their present claims in opposing the Motion for summary judgment. Further, The Wattamwars never moved to amend their Complaint. Thus, this case is distinguishable from **Sands**. Thus, the trial court properly deemed these claims waived. **See Krentz v. Consol. Rail Corp.**, 910 A.2d 20, 37 (Pa. 2006) (citation omitted) (stating that "arguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal.") (citation omitted); **accord, Wells Fargo Bank N.A. v. Taggart**, 221 A.3d 233 n.3 (Pa. Super. 2019). The record supports the trial court's determination, and we discern no error in this regard. Consequently, we cannot grant the Wattamwars relief on their first two claims.

In their third claim, the Wattamwars argue that the trial court improperly entered summary judgment, because they only ascertained their damages upon learning that the asphalt plant would not be closing. Brief for

Appellant at 24. The Wattamwars assert that the true measure of their damages should be based upon

> what they were at the time of the appraisal [and] not at the time of settlement[,] because if the real property had a diminished value at the time of settlement[,] but increased substantially by the time of trial[,] it could not be said that [they] were damaged at trial[,] and the measure of damages should be as of the date of trial.

*Id.* at 24. The Wattamwars contend that their expert's opinion is therefore competent to establish their damages. *Id.*

The Wattamwars also argue that they may recover for fraud if they suffered a "pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation." *Id.* at 25 (quoting Restatement (Second) of Torts § 549) (emphasis omitted). Once again, the Wattamwars argue that their expert's valuation is competent to establish such a "pecuniary loss suffered otherwise." *Id.* Similarly, the Wattamwars argue that the damages for fraud should be measured as of the date of trial, because they were not aware of their damages until they had learned of the plant's non-closure. *Id.*

In their brief, the Wattamwars again argue that their own opinion as to the value of the property, as well as their expert's opinion of damages, constituted competent evidence of ascertainable loss and actual damages under the UTPCPL. *Id.* at 26. According to the Wattamwars, "[a]scertainable loss is not synonymous with the difference between the value of the property

on the day of the transaction and its purchase price or other value given for it." ***Id.***

In its Opinion, the trial court addressed this claim, and concluded that it is waived, based upon the Wattamwars' failure to raise it in their Response to Defendants' Motion for summary judgment. ***See*** Trial Court Opinion, 12/30/19, at 15-16. We agree with the sound reasoning of the trial court, as set forth in its Opinion, and affirm on this basis with regard to the Wattamwars' third claim. ***See id.***

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2021



Filed and Attested by
PROTHONOTARY
30 Dec 2019 02:51 PM
J. Miller

| | |
|---|---|
| PARITOSH WATTAMWAR **and** RANJANA SINGH-WATTAMWAR, h/w : : : | COURT OF COMMON PLEASE OF CHESTER COUNTY, PENNSYLVANIA |
| **vs.** Plaintiffs, : | CIVIL ACTION – LAW |
| : | |
| FOX & ROACH LP d/b/a BERKSHIRE : HATHAWAY HOMESERIVICES FOX : AND ROACH, REALTORS®, **and** : BERKSHIRE HATHAWAY : HOMESERVICES FOX AND ROACH, : REALTORS®, **and** LASZLO : GARAY : | NO. 2017-08905-TT  Appeal at Superior Court Docket Nos. 3112 EDA 2019 **and** 3109 EDA 2019 |
| Defendants. : | |

| | |
|---|---|
| KATHLEEN MAKOWKA : | COURT OF COMMON PLEASE OF CHESTER COUNTY, PENNSYLVANIA |
| Plaintiff, : | |
| **vs.** : | CIVIL ACTION – LAW |
| : | |
| FOX & ROACH LP d/b/a BERKSHIRE : HATHAWAY HOMESERIVICES FOX & : ROACH, REALTORS®, **and** : BERKSHIRE HATHAWAY : HOMESERVICES FOX AND ROACH, : REALTORS®, **and** LASZLO : GARAY : | NO. 2017-08907-TT  Appeal at Superior Court Docket Nos. 3111 EDA 2019 **and** 3110 EDA 2019 |
| Defendants. : | |

## OPINION PURSUANT TO Pa. R.A.P. 1925(a)

Paritosh Wattamwar and Ranjana Singh-Wattamwar (Plaintiffs in case number 2017-08905) and Kathleen Makowka (Plaintiff in case number 2017-08907) separately appeal from the Court's September 25, 2019 order granting Defendants' motions for summary judgment[1]

---

[1] Defendants filed separate motions for summary judgment against the Wattamwar Plaintiffs and Plaintiff Makowka on July 11, 2019. On September 25, 2019, the Court granted Defendants' motions in a consolidated order which was entered on the docket in *Wattamwar* action and the *Makowka* action.

*2017-08905-TT*

and entering judgment in favor of Defendants and against Plaintiffs.  The Court submits this consolidated Opinion pursuant to Pa. R.A.P. 1925(a).[2]

**Procedural History/Duplicative Appeals**

Prior to addressing the merits of Plaintiffs' 1925(b) statements the Court summarizes the complicated procedural history of these cases and recommends dismissal as duplicative of the appeals docketed in the Superior Court at Nos. 3109 EDA 2019 (in the *Wattamwar* action) and 3110 EDA 2019 (in the *Makowka* action).

Plaintiffs initiated the above-entitled actions on September 15, 2017, by filing complaints against Defendants.[3]  Plaintiffs' actions are two of four cases filed on the same day raising identical claims against identical Defendants. These cases are as follows:

- Mary E. Rush vs. Above-Entitled Defendants (docketed at 2017-08904)

- The Wattamwar Plaintiffs vs. Above-Entitled Defendants (docketed at 2017-08905)

- Jose and Julie Robertson vs. Above-Entitled Defendants (docketed at 2017-08906)

- Plaintiff Makowka vs. Above-Entitled Defendants (docketed at 2017-08907)

The plaintiffs in all four cases asserted claims against Defendants for "Fraud" and "Violations of the Unfair Trade Practices Act and Consumer Protection Law" arising out of the plaintiffs' purchases of newly construed homes in a residential community known as "Pickering Crossing." The underlying factual basis for the plaintiffs' claims in each case are

---

[2] In their Pa. R.A.P. 1925(b) statements the Wattamwar Plaintiffs and Plaintiff Makowka raise identical errors complained of on appeal. Consequently, for ease of disposition, the Court addresses Plaintiffs' errors in a consolidated 1925(a) opinion.

[3] Plaintiffs identified three Defendants in each complaint: **(i)** Fox & Roach LP d/b/a Berkshire Hathaway HomeServices Fox and Roach, Realtors®; **(ii)** Berkshire Hathaway HomeServices Fox and Roach, Realtors®; and **(iii)** Laszlo Garay. It appears that, based on the matter in which these actions were litigated, the first two Defendants are one in the same.

virtually identical and is set forth more fully in the footnote appended to the Court's September 25, 2019 order.

On May 7, 2018, the Court entered an order consolidating "for all purposes" the four related actions pursuant to Pa. R.C.P. 213(a).[4] The order did not specify that the parties should continue filing legal papers under the docket number assigned to each case; rather, it stated that the cases were consolidated under the *Rush* action at docket number 2017-08904.

On June 8, 2018, the individual Defendant in the four related actions, Laszlo Garay ("Garay"), filed an original action against Jose Robertson (One of the two plaintiffs in the 2017-08906 action) asserting a claim for defamation.[5] Shortly thereafter, Robertson, in his capacity as defendant in the *Garay* action, moved to consolidate the *Garay* action with the Robertson Plaintiffs' fraud/UTPCPL action against Garay. The Court denied the motion by order dated October 17, 2018, reasoning in a footnote that the Robertson Plaintiffs' action against Garay and the other Defendants had "already been consolidated" under the *Rush* action at docket number 2017-08904, and that further consolidation "would tend to mislead or confuse the jury" because it would introduce new theories of liability and defenses into the cases which were applicable to only a sub-set of parties.

Subsequently, on November 28, 2018, the Court entered three (3) orders that restructured the manner in which the four related actions (*Rush, Wattamwar, Robertson,* and *Makowka*) and the *Garay* defamation action were consolidated. First, the Court vacated its

---

[4] The Court's use of the language "for all purposes" in its consolidation order was arguably misleading pursuant to Kincy v. Petro, 2 A.3d 490 (Pa. 2010), wherein the Pennsylvania Supreme Court held that "complete" consolidation of actions is only appropriate when two or more actions "involve the same parties, subject matter, issues, and defenses." *Id.*, at 495. Here, complete consolidation of the four related actions would not have been proper because they involve different party-plaintiffs. In any event, the Court entered the consolidation order for purposes of conducting a single trial of all four actions; the actions, however, would have still produced separate verdicts and judgments.

[5] Garay's defamation action against Robertson was docketed in this Court at 2018-05908-TT.

prior consolidation order of May 7, 2018, thereby undoing the original consolidation of the four related actions.[6] Second, the Court *sua sponte* consolidated three of the four related actions—*Rush, Wattamwar, and Makowka*—"for discovery, pretrial and trial purposes under case number 2017-08904."[7] Finally, the Court *sua sponte* consolidated "for discovery, pretrial and trial purposes" the *Garay* defamation action against Jose Robertson with the Robertson Plaintiffs' fraud/UTPCPL action against Garay.[8] Consequently, as of November 28, 2018, the procedural posture of the aforesaid cases stood as follows:

- Garay's defamation action against Jose Robertson was consolidated with the Robertson Plaintiffs' fraud/UTPCPL action against Garay and the other Defendants;

- Separately, the *Rush, Wattamwar,* and *Makowka* actions were consolidated for purposes of pre-trial and trial administration.

The consolidation of the *Garay-Robertson* actions and the three-related actions onto separate pre-trial and trial tracts was prudent because, as noted above, Garay's action for defamation was against only one of the six plaintiffs in the four related actions.

Jose Robertson subsequently moved for summary judgment in the *Garay* defamation action. On September 23, 2019, the Court granted the motion and entered judgment against Garay, thereby ending Garay's defamation claim against Robertson.[9] In a footnote to the order, the Court explained, in light of the fact that Robertson's summary judgment motion was granted, the separate consolidations of the *Garay-Robertson* actions and the three related

---

[6] Although the vacation order was entered on the docket only in the *Rush* action, the prothonotary designated the original May 7, 2018 consolidation order—which had been entered on the docket in all four actions—"vacated."

[7] This consolidation order was entered on the docket in the *Rush, Wattamwar*, and *Makowka* actions; it was not entered on the docket in the *Robertson* action.

[8] This consolidation order was entered on the docket in both the *Garay* action and the *Robertson* action. It was not entered on the docket in the three related actions.

[9] The Court's order granting summary judgment in favor of Robertson and against Garay was a final order pursuant to Pa. R.A.P. 341(b). Garay did not file a notice of appeal from that order.

actions was no longer necessary. Accordingly, the Court's September 23, 2019 order also *sua sponte* directed that the Robertson Plaintiffs' fraud/UTPCPL action against Garay and the other Defendants was "*Reconsolidated* for pre-trial and trial purposes" under the *Rush* action at docket number 2017-08904, thereby once again uniting all four cases for purposes of pre-trial and trial disposition.

On September 25, 2019, the Court entered an identical order on the docket of all four actions granting the motions for summary judgment filed by Defendants against the Wattamwar Plaintiffs, the Robertson Plaintiffs, and Plaintiff Makowka, and entered judgment in favor of Defendants.[10] This is the order from which the Wattamwar's and Makowka filed notices of appeal.

On October 3, 2019, the Court issued an order, entered on the docket in all four actions, which denied as moot multiple outstanding motions which had previously been filed by Defendants. The final sentence of that order states: "[T]he above-captioned consolidated cases are hereby severed," and explained in a footnote that consolidation was "no longer necessary as summary judgment has been granted in all but one of the consolidated cases."

On October 23, 2019, the Wattamwar Plaintiffs and Plaintiff Makowka filed notices of appeal from the Court's September 25, 2019 order granting summary judgment in favor of Defendants. Notably, the Wattamwar's and Makowka each filed *two* notices of appeal: one under the *Rush* action at docket number 2017-08904, and the other under the docket number

---

[10] Defendants filed their motions for summary judgment against the Wattamwar Plaintiffs and Plaintiff Makowka under the docket number assigned to the *Rush* action; Defendants filed their motion for summary judgment against the Robertson Plaintiffs under the docket number assigned to the *Robertson* action. Defendants did not move for summary judgment against Plaintiff Mary E. Rush in the *Rush* action. Because Defendants decided to file the motions applicable to the Wattamwar Plaintiffs and Plaintiff Makowka under docket number assigned to the *Rush* action (rather than the docket number assigned to those cases), the Court's entered its September 25, 2019 on the docket of all four actions. See footnote 11, *infra*.

assigned to their case at the time it was filed. This caused *four* docket numbers to be generated in the Superior Court, as follows:

- The Wattamwar's notice of appeal filed under the *Rush* action at 2017-08904 was docketed in the Superior Court at 3109 EDA 2019;

- Makowka's notice of appeal filed under the *Rush* action at 2017-08904 was docketed in the Superior Court at 3110 EDA 2019;

- The Wattamwar's notice of appeal filed under the *Wattamwar* action at 2017-08905 was docketed in the Superior Court at 3112 EDA 2019;

- Makowka's notice of appeal filed under the *Makowka* action at 2017-08907 was docketed in the Superior Court at 3111 EDA 2019.

The Court suggests that the notices of appeal filed by the Wattamwar Plaintiffs and Plaintiff Makowka under the docket number assigned to the *Rush* action should be dismissed because they are duplicative of the notices of appeal filed under the docket numbers assigned to Plaintiffs' respective cases. Pennsylvania Rule of Appellate Procedure 902 states: "An appeal permitted by law as of right from a lower court to an appellate court shall be taken by *filing a notice of appeal* with the clerk of the lower court …." Pa. R.A.P. 902 (emphasis added). Implicit in Rule 902's phrase "filing a notice of appeal" is the requirement that the party taking an appeal must file the notice on the docket from which the order appealed from is taken. *See generally,* Pa. R.C.P 904(d) (Stating that the contents of a notice of appeal "shall include a statement that the order appealed from has been entered *on the docket*.") (emphasis added); *cf.,* Pane v. Indian Rocks Prop. Owners Ass'n, Inc. of Ledgedale, 167 A.3d 266, 272 (Pa. Cmwlth. 2017) (Affirming trial court's denial of plaintiffs' motion for sanctions because, *inter alia,* plaintiffs filed their notice of appeal under the incorrect docket number in one of two related cases).

Here, the Court resolved Defendants' motions for summary judgment directed at the Wattamwar, Robertson, and Makowka Plaintiffs in a single order issued September 25, 2019. That order was then entered on the docket of all four actions. Accordingly, pursuant to Pa. R.A.P. 902, the Wattamwar Plaintiffs and Makowka Plaintiffs could perfect an appeal by "filing a notice of appeal" under the docket number assigned to their actions, namely, 2017-08905 (for the Wattamwar Plaintiffs) and 2017-08907 (for Plaintiff Makowka). That occurred in these cases. The duplicate notices of appeal filed by the Wattamwar Plaintiffs and Plaintiff Makowka under the docket number assigned to the *Rush* action were unnecessary because that docket number represents the *Rush* action only, even though the Court's September 25, 2019 order was entered on the docket in the *Rush* action.[11] Accordingly, the Court recommends dismissal as duplicative of the Wattamwar and Makowka appeals docketed in the *Rush* action at Superior Court docket numbers 3109 EDA 2019 and 3110 EDA 2019, respectively.

**Errors Complained of on Appeal**

Having outlined the procedural history of these cases, the Court turns to the Wattamwar Plaintiffs and Plaintiff Makowkas' statements of errors complained of on appeal. The parties set forth identical issues for review, restated essentially verbatim as follows:

---

[11] The Court's May 7, 2018 order which originally consolidated the four related actions states that the cases were consolidated "*under case number 2017-08904*." Likewise, the Court's November 28, 2018 order consolidating the *Rush*, *Wattamwar*, and *Makowka* actions states that the cases are consolidated "*under case number 2017-08904*." Finally, the Court's September 23, 2019 order "reconsolidating" the *Robertson* action with the *Rush*, *Wattamwar*, and *Makowka* actions states that the *Robertson* action is consolidated "*under the case captioned Mary E. Rush v. Laszlo Garay, et al., at docket number 2017-08914*."

It appears that the language quoted above led the parties to the reasonable (albeit erroneous) belief that, in each instance of consolidation, the actions were entirely merged under the docket number assigned to the *Rush* action. As explained, these cases were consolidated so that they could be tried together, not for purposes of "merging" them into a single action. While in hindsight the phrase "under case number 2017-08904" and similar language in the Court's consolidation orders should have been avoided, these terms were simply meant to designate a lead case among the four related actions. Consequently, the proper method of filing legal papers following each consolidation would have been for the parties to continue to file under the docket number originally assigned to each case.

1. The Learned Trial Judge's granting of Summary Judgment was an error of law and/or an abuse of discretion as even if the opinion of the appraiser Donald Garfinkel on diminished value was disallowed the plaintiff[s] would still be entitled to a verdict for nominal damages as set forth in Sands v. Forrest[,] 290 Pa. Super. 48, 51, 434 A.2d 122, 124 (1981) as well as punitive damages and costs and attorneys' fees under the Unfair Trade Practices and Consumer Protection Law.

2. The Learned Trial Judge's granting of Summary Judgment was an error of law and/or an abuse of discretion as even the opinion of the appraiser Donald Garfinkel on diminished value was disallowed the plaintiff[s] as the owner[s] of the real property [is/are] competent to testify at trial as [to her/their] opinion[s] of the value of the real property and compare that value to what was paid for the real property. Westinghouse Air Brake Co. v. City of Pittsburgh, 316 Pa. 372, 176 A. 13 (1934).

3. The Learned Trial Judge's granting of Summary Judgment was an error of law and/or an abuse of discretion as the opinion on diminished value of Donald Garfinkel should be considered by the jury. The plaintiff[s] [was/were] told that the plant would close within two years, it was not until [she/they] learned the plant was not closing that [she/they] [was/were] aware of [her/their] damages. Furthermore, the true measure of damages should be what [the damages] were at the time of the appraisal not at the time of settlement. If the real property had a diminished value at the time of settlement but increased substantially by [the] time of trial it could not be said that plaintiff[s] [was/were] damaged at trial. The measure of damages should be as of the date of trial.

The Court suggests that the issues identified in Plaintiffs' first and second errors are waived for failure to preserve them at the trial level. Pennsylvania Rule of Appellate Procedure 302(a) provides: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.C.P. 302(a). In the context of a motion for summary judgment, Rule 302(a) has been interpreted to require a non-moving party to assert an argument in opposition to summary judgment in order to preserve that argument for appellate review. *See, e.g.,* Devine v. Hutt, 863 A.2d 1160, 1169 (Pa. Super. 2004) ("[A]rguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal."); Harber Philadelphia Ctr. City Office Ltd. v. LPCI Ltd. P'ship, 764 A.2d 1100, 1105 (Pa. Super. 2000) ("[A] non-moving party's failure to raise grounds for relief in the trial court as a basis upon which to deny summary judgment waives those grounds on appeal."); Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc., 916 A.2d 686, 690 (Pa. Super. 2007) ("Our

caselaw is clear that, in defending against a motion for summary judgment, the non-moving party's decision to pursue one argument over another carries the certain consequence of waiver for those arguments that could have been raised but were not.") (cleaned up).

Here, none of the arguments set forth in Plaintiffs' first and second errors were presented, either explicitly or impliedly, in Plaintiffs' responses in opposition to Defendants' motions for summary judgment. Accordingly, they cannot be asserted for the first time in Plaintiffs' 1925(b) statements as a basis for reversal or vacation of the Court's September 25, 2019 order.

To the extent this Court determines that the arguments stated in Plaintiffs' first and second errors are not waived, they nonetheless merit no relief.

First, the Court did not err in granting Defendants' motions for summary judgment on the basis that Plaintiffs "would still be entitled to a verdict for nominal damages as set forth in *Sands v. Forrest*[,] 290 Pa. Super. 48, 51, 434 A.2d 122, 124 (1981)." In Cohen v. Resolution Tr., 107 F. App'x 287 (3d Cir. 2004) the Third Circuit Court of Appeals[12] summarized the nominal damages issue presented by Plaintiffs as follows:

> In Bastian v. Marienville Glass Co., 126 A. 798, 800 (Pa. 1924), the Pennsylvania Supreme Court held that a plaintiff who failed to establish compensatory damages was not entitled to nominal damages absent a request for them. Subsequently, Pennsylvania courts have only reversed a trial court's failure to award nominal damages if the plaintiff has, at a minimum, requested nominal damages or sought permission to amend the complaint to do so. *See,* Elia v. Olszewski, 84 A.2d 188, 191 (Pa. 1951) (holding that the plaintiff was entitled to a verdict and nominal damages because the defendant admitted that it breached the parties' contract, but noting that the court does "not ordinarily reverse on this ground alone where no request was made for [nominal

---

[12] The Court discusses the unreported Third Circuit decision in Cohen for its persuasive value. *See, e.g.,* O'Toole v. Pennsylvania Dep't of Corr., 196 A.3d 260, 271 n. 15 (Pa. Cmwlth. 2018) ("Generally, decisions of federal district courts and courts of appeals are not binding … but they may have persuasive value. Unreported federal court decisions may also have persuasive value.") (cleaned up); Eckman v. Erie Ins. Exch., 21 A.3d 1203, 1207 (Pa. Super. 2011) (Explaining that the Superior Court may rely on decisions of the federal courts "for guidance to the degree we find them useful and not incompatible with Pennsylvania law.").

damages] at the trial and no establishment of a property right is involved."); *see also,* Sands v. Forrest, 434 A.2d 122, 124 (Pa. Super. 1981) (holding that the plaintiffs' claim for fraud should not have been dismissed because the district court should have allowed them to amend their complaint regarding damages); Peerless Wall & Window Coverings, Inc. v. Synchronics, 85 F.Supp.2d 519, 536 (W.D. Pa.2000) (concluding that, under Pennsylvania law, the plaintiff's claim for fraud should not have been dismissed for failure to prove actual damages because the plaintiff requested nominal damages as well).

*Id.*, 289 – 90 (cleaned up).

Here, in their complaints filed September 15, 2017, neither the Wattamwar Plaintiffs nor Plaintiff Makowka requested an award of "nominal damages" against Defendants. To the contrary, in their fraud claims Plaintiffs sought "an amount in excess of $50,000.00 together with costs, attorney's fees, delay damages and punitive damages." Similarly, in their UTPCPL claims, Plaintiffs demanded "an amount in excess of $50,000.00 together with costs, attorney's fees, triple damages, delay damages and punitive damages." Nowhere in their complaints or elsewhere in the record is there a suggestion that Plaintiffs sought nominal damages from Defendants; nor did Plaintiffs ever seek leave to amend their complaints to include a demand for nominal damages. Accordingly, the Court did not err in granting Defendants' motions for summary judgment on the basis that Plaintiffs would be entitled to a verdict for nominal damages.

Second, the Court did not err in granting Defendants' motions for summary judgment on the basis that Plaintiffs would be entitled to "punitive damages" under the Unfair Trade Practices and Consumer Protection Law. Section 201-9.2(a) of the UTPCPL addresses the types of damages available to litigants:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful [under] of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in

its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2(a). In Richards v. Ameriprise Fin., Inc., 152 A.3d 1027 (Pa. Super. 2016) this Court specified that a "trial court ha[s] the discretion to award … treble damages, but the trial court [is] prohibited from imposing punitive damages under the [UTPCPL]." *Id.*, 1039 – 40. Accordingly, because punitive damages are not an available remedy under the UTPCPL, the Court did not err in granting Defendants' motions for summary judgment on the basis that Plaintiffs would have been entitled to a verdict for punitive damages

Third, the Court did not err in granting Defendants' motions for summary judgment on the basis that the UTPCPL entitled Plaintiffs to an award of "costs and attorney's fees." Section 201-9.2(a) of the UTPCPL, *supra*, authorizes a person to bring a private right of action to recover "actual damages" as a result of any "method, act or practice declared unlawful" under the statute. *Ibid.* The UTPCPL also gives trial courts discretion to award a plaintiff "up to three times the actual damages sustained" as well as "costs and reasonable attorney fees." *Ibid.* However, neither the statute's treble damages provision nor its costs and attorney's fees provision is triggered until a plaintiff prevails on his or her UTPCPL claim, which requires, as an element, proof of the "actual damages sustained." *See*, Krishnan v. Cutler Grp., Inc., 171 A.3d 856, 871 (Pa. Super. 2017) (The UTPCPL "authorizes the trial judge to grant *a successful litigant* an award for … reasonable attorney fees, and costs[.]"); *accord*, In re Bell, 314 B.R. 54, 60 (Bankr. E.D. Pa. 2004) (Explaining that because the Debtor in an adversary proceeding had no actual damages under the UTPCPL, "the Debtor has no actual damages to treble.").[13]

---

[13] See footnote 12, *supra*.

Herein, the Court's order determining Defendants' motions for summary judgment held that Plaintiffs' failed to present "competent evidence of damages" because Plaintiffs' expert valuation reports relied on a series of incorrect valuation dates. In doing so, the Court cited Skurnowicz v. Lucci, 798 A.2d 788 (Pa. Super. 2002) (*superseded by statute on other grounds as recognized in* Milliken v. Jacono, 60 A.3d 133 (Pa.Super. 2012)), for the proposition that, in the instant cases, the proper measure of "actual damages" under the UTPCPL was the difference between the real (or market) values of Plaintiffs' homes and their misrepresented values. *See,* Skurnowicz, 798 A.2d at 795 (Affirming trial court's awards of "actual damages" under the UTPCPL as measured by "the difference between the [plaintiffs' home's] actual value and the misrepresented value."). While the Court's order stated that Plaintiffs failed to present "competent evidence of damages" (and not "competent evidence of *actual* damages"), it is abundantly clear that the Court was delineating the proper measure of "actual damages" for purposes of Plaintiffs' UTPCPL claims. Accordingly, because the Court determined that Plaintiffs' failed to present competent evidence of "actual damages" under the UTPCPL (and therefore failed to prove their UTPCPL claims), the Court's discretion to award "costs and attorney's fees" under the statute was never triggered.

Lastly, this Court did not err in granting Defendants' motions for summary judgment on the basis that Plaintiffs were competent to offer testimony at trial regarding "the value of the real property and [to] compare that value to what was paid for the real property."

As explained in the Court's September 25, 2019 order, to survive summary judgment Plaintiffs were required to come forth with evidence of damages as measured by "the difference in value between the real, or market, value of the property at the time of the transaction and the higher, or fictitious, value which [they were] induced to pay for it." Sands, 434 A.2d at 124. In

these cases, the relevant "fictitious" values are the amount of money Plaintiffs paid for their homes—amounts which are in the summary judgment record and which Plaintiffs plainly could have testified to at trial. However, in the circumstances of these cases, the true "market values" of Plaintiffs' homes could only be established by expert evidence.

"Expert testimony becomes necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person." Storm v. Golden, 538 A.2d 61, 64 (Pa. Super. 1988). Accordingly, if the subject matter to be tried "is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman," it may only be introduced through expert testimony. Wexler v. Hecht, 847 A.2d 95, 99 (Pa. Super. 2004) (cleaned up); *see generally*, Pa. R.E. 702 (Governing testimony at trial by expert witnesses).

Here, Plaintiffs alleged that trucks and equipment operating on an asphalt plant adjacent to the Pickering Crossing residential development generated a significant amount of noise; Plaintiffs further alleged that they purchased their homes in Pickering Crossing under the fraudulent assumption that the asphalt plant (and the noise it generated) would cease operations within two years of the dates of purchase. Accordingly, to establish market values, Plaintiffs needed proof of what a reasonable buyer would have paid for their homes if the fraudulent statements and omissions alleged in Plaintiffs' complaints were never part of the sales transactions. These amounts would account for the manner in which continuous off-site noise impacts real property values, and therefore cannot be said to fall within "the ken of the average layman." Wexler, 847 A.2d at 99. Instantly, none of the Plaintiffs purport to be an expert in appraising or otherwise valuing real property impacted by off-site factors such as excessive

lighting or noise. Accordingly, the Court did not err in granting summary judgment on the basis that Plaintiffs could have offered opinion testimony on the true market values of their homes.

Plaintiffs' reliance on <u>Westinghouse Air Brake Co. v. City of Pittsburgh</u>, 176 A. 13 (Pa. 1934) is not to the contrary. There, the Pennsylvania Supreme Court held that an owner of real property is competent to offer an opinion on the property's market value provided that the owner, "through personal knowledge of his property, with a reasonable opportunity to observe its area, the uses to which it may be put, the extent and condition of any improvements thereon, possesses sufficient knowledge from which to form an opinion as to [its] value[.]" *Id.*, at 15. In the years since <u>Westinghouse</u>, Pennsylvania courts have consistently held that an owner of real property "is competent to testify about the value of his property so long as his testimony is based upon his personal knowledge." <u>Nelson v. State Bd. of Veterinary Med.</u>, 938 A.2d 1163, 1171 (Pa. Cmwlth. 2007); *see also*, <u>Welsh v. City of Philadelphia</u>, 1987 WL 582723 (Pa. Com. Pl. 1987) ("Pennsylvania cases hold that a property owner may testify about the fair market value of her property, and need not be held to the standard of an appraiser," provided that the owner "has personal knowledge of the property and an understanding as to how it could be used[.]").

The standard of testimonial competency articulated in <u>Westinghouse</u> is not applicable to the instant actions. Under <u>Westinghouse</u>, "[t]he key to competency is the owner's *knowledge* of his own property." <u>Nelson</u>, 938 A.2d at 1171 (emphasis added); *accord,* <u>Welsh</u>, at *1 (Holding that plaintiff's testimony regarding the fair market value of her residence was "based upon personal knowledge" because she "lived in the home from 1958 until 1983" and "made numerous repairs and improvements to it[.]"). <u>Westinghouse</u> thus lowers the burden for admissibility of real property values at trial because it presupposes that owners are familiar

with their property in such a way that they may "offer an opinion, for what it may be worth, of the value of [the] property." Hencken v. Bethlehem Mun. Water Auth., 72 A.2d 264, 267 (Pa. 1950). Here, by contrast, Plaintiffs could not prove market value by offering opinions based on their personal knowledge and experience with their homes. To the contrary, for purposes of Plaintiffs' claims, they were required to establish market value as of the time their homes were purchased. *See*, Sands, *supra*, 434 A.2d at 12 (Market value measured "at the time of the transaction."). Further, Plaintiffs were required to establish a *hypothetical* market value premised upon the price or ranges or prices at which Plaintiffs' homes could have sold for if the fraudulent statements and omissions alleged in Plaintiffs' complaints were not part of the sales transactions. These values are not the type of market value opinion testimony contemplated by Westinghouse's "personal knowledge" paradigm. Rather, these are opinions that must be based upon knowledge acquired by a real estate appraiser over time as to how those statements might impact the market value of other properties. This is not knowledge within the ken of a homeowner. Accordingly, the Court did not err in granting summary judgment to Defendants on the basis that Plaintiffs could have individually offered an opinion at trial on the market value of their homes.

In their third error complained of on appeal, Plaintiffs assert that the expert reports of appraiser Donald Garfinkel constituted competent evidence of damages because the market value of their homes should be measured "at the time of the appraisal" rather than "at the time of settlement." Plaintiffs' appear to contend that measuring damages from the time of appraisal is a more accurate representation of damages because: (1) Plaintiffs did not become aware that the market value of their homes diminished until they "learned the plant was not closing"; and (2) "If the real property had a diminished value at the time of settlement but increased

substantially by the time of trial it could not be said that [Plaintiffs] were damaged at trial." Finally, Plaintiffs also contend that damages should be measured "as of the date of trial," a statement that would appear to contradict their assertion that damages should be measured from the time of appraisal.

In their responses to Defendants' summary judgment motions Plaintiffs generally contended that the measure of damages as calculated in the Garfinkel reports constituted competent evidence of damages. To the extent Plaintiffs' instant arguments are encompassed within their argument in opposition to summary judgment, the Court submits that the order under review adjudged Plaintiffs' proof of damages as set forth in the Garfinkel reports against how damages are measured by existing precedent, and determined that Garfinkel's "time of appraisal" valuations were an inaccurate measure of damages. To the extent Plaintiffs are making an argument for the extension or modification of existing law to account for an alternative method of calculating damages—*i.e.*, a measurement made "at the time of appraisal" or "at the time of trial"—the Court submits that it was without authority to apply such a rule to the facts of the instant cases because it is inconsistent with controlling case authority.

## Conclusion

For the foregoing reasons, the order under review should be **AFFIRMED**.

BY THE COURT:

_____
WILLIAM P. MAHON          J.

Dated: 12/30/19



**Type:** OPINION BY

**Case Number:** 2017-08905-TT

**Case Title:** WATTAMWAR, PARITOSH et al VS. GARAY, LASZLO ET AL

So Ordered

/s/ William Mahon

Electronically signed on 2019-12-30 14:51:24     page 17 of 17